UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CURRENCY 65.08094134 BITCOIN, et al.,

Defendants.
_______________________________/

Case No. 2:23-cv-10394

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING**
**IN PART MOTIONS TO DISMISS [22, 33, 42]**

In 2022, the Government seized millions of dollars in cryptocurrency as a result of a drug trafficking investigation. More than a year later, it filed an amended civil forfeiture complaint with five undetailed paragraphs of factual allegations. ECF No. 9. Since then, the Government has continued to hold the assets over the objection of three claimants who all moved to dismiss the complaint for failure to state a claim. ECF Nos. 22, 33, 42. The claimants all argued, in part, that the Government's complaint is deficient under the heightened pleading standard that applies to civil forfeiture cases set forth in Supplemental Rule G(2)(f). The Court agrees and will dismiss the complaint, though it will permit the Government to file an amended complaint that complies with Rule G(2)(f). Finally, the Court will deny the additional grounds for dismissal raised by Claimant Marcelo Antonio Wilson Porras and address potentially sanctionable conduct by his Counsel.

## BACKGROUND

The Government seized various cryptocurrencies that were allegedly "involved in a money laundering and unlicensed money transmitting conspiracy." ECF No. 9, PageID.43. After the Government filed a civil forfeiture complaint, the Court received several verified claims to parts of the cryptocurrency. ECF Nos. 20, 21, 41. Marcelo Antonio Wilson Porras asserted an interest in the 247,653.48461442 United States Dollar Tether that the Government seized from Binance User ID 40215431. ECF No. 20, PageID.81; ECF No. 9, PageID.39. Meanwhile, Jorge Amador asserted an interest in the 65.08094134 Bitcoin that the Government seized from Binance User ID 26712506. ECF No. 21, PageID.85; ECF No. 9, PageID.39. Amador later filed an amended claim to the same Bitcoin and added Kebblar Capital, S.A.P.I. DE C.V. as a claimant. ECF No. 41. Amador is allegedly the sole living shareholder of Kebblar Capital, an investment fund. *Id.* at PageID.277.

The Government alleged that, from "at least 2018" to "the present", an unnamed Mexico-based "Money Laundering Organization" (MLO) used Binance accounts 26712506, 40215431, 91594658, and 20928657 to "transmit the proceeds of international drug trafficking." ECF No. 9, PageID.43–44. Unnamed couriers allegedly obtained bulk U.S. dollars from unspecified drug trafficking sales, deposited the money, converted it to cryptocurrency, and transmitted the cryptocurrency to a digital address provided by the unnamed MLO. *Id.* As a result, in May 2022, pursuant to a federal warrant, the United States Drug Enforcement Administration (DEA)

seized millions of dollars of cryptocurrency from the targeted Binance accounts. *Id.* at PageID.44.

Each claimant then moved to dismiss. All three motions to dismiss argued that the Government failed to plead sufficient facts under Supplemental Rule G(2)(f), although Claimant Porras raised additional grounds for dismissal. *Compare* ECF Nos. 33, 42, *with* ECF No. 22.

In response to Porras's motion to dismiss, the Government served Porras with special interrogatories. ECF No. 25; *see* Fed. R. Civ. P. Supp. R. G(6)(c) (deferring Government's response date until 21 days after claimant answered special interrogatories). Porras answered the interrogatories in June and September 2025. ECF Nos. 35-3–35-6. But the Government subsequently moved to strike Porras's claim. ECF No. 35. That caused further delays because the Court could not decide the motion to dismiss until after ruling on the motion to strike. Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(A). The Court denied the motion to strike on March 10, 2026. ECF No. 48. Pursuant to a prior order of the Court, that meant that the Government had until March 17, 2026 to respond to the motion to dismiss. *See* ECF No. 36, PageID.225. After the Government failed to file a response by the deadline, the Court ordered the Government to show cause for why the Court should not dismiss the case for failure to prosecute. ECF No. 49. The Government then promptly responded to the motion to dismiss and the order to show cause. ECF Nos. 50, 51.

**LEGAL STANDARD**

Claimants with standing to sue can move to dismiss a civil forfeiture case under Rule 12(b). Fed. R. Civ. P. Supp. R. G(8)(b)(i). Rule 12(b)(6) allows motions to dismiss for "failure to state a claim upon which relief can be granted." In the forfeiture context, to state a claim, a complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).

At trial, the Government must prove, "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Property is subject to forfeiture when it is "involved in a transaction or attempted transaction" that violates any one of several statutes. 18 U.S.C. § 981. Those statutes include 18 U.S.C. § 1956 ("Laundering of monetary instruments"), § 1957 ("Engaging in monetary transactions in property derived from specified unlawful activity"), and § 1960 ("Prohibition of unlicensed money transmitting businesses").

"[T]he Government is not required to allege in the complaint all of the facts and evidence at its disposal. It is sufficient for the Government to . . . plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *United States v. $506,069.09 Seized From First Merit Bank*, 664 F. App'x 422, 434 (6th Cir. 2016) (quoting *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010)).

## DISCUSSION

The Court begins with the argument that the Government failed to state a claim pursuant to Rule G(2)(f). Then, the Court will address the remaining arguments by Porras before it confronts the potentially sanctionable conduct by Porras's counsel.

### I. Motion to Dismiss for Failure to State a Claim

All three motions to dismiss argued that the Government failed to state a claim pursuant to Rule G(2)(f). One said that the complaint offered "only vague and conclusory assertions about a 'Money Laundering Organization' and fail[ed] to articulate any concrete facts connecting the Defendant property to illegal activity." ECF No. 22, PageID.96. The other two argued that the complaint's "conclusory allegations, devoid of any supporting factual allegations, are an insufficient basis for the confiscation of millions of dollars' worth of assets." ECF No. 33, PageID.158; ECF No. 42, PageID.281–282 (adopting arguments in Claimant Amador's motion to dismiss). At bottom, the motions argued the same thing: the Government did not provide enough detail.

Because civil forfeiture complaints are subject to the heightened pleading requirements of Rule G(2)(f) and the Government offered a breezy complaint light on details, the Court will grant the motion to dismiss. The Court, however, will give the Government fourteen days to file an amended complaint that complies with Rule G(2)(f).

*A. The Pleading Requirement*

There is a spectrum of civil pleading requirements, from the relatively easygoing Rule 8(a)(2) to the more stringent Rule 9(b). The question here is where the Rule G(2)(f) standard falls along that spectrum.

For most civil cases, a complaint simply needs to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rule requires facts pleaded that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Detailed allegations are not required. *Twombly*, 550 U.S. at 556 (citation omitted).

In contrast, for fraud claims, a complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That rule requires the plaintiff to include detailed allegations that "specify the 'who, what, when, where, and how' of the alleged fraud." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614 (6th Cir. 2024) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)). As a result, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 614–15 (quoting *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022)).

Rule G(2)(f) does not obviously align with either pleading standard. The rule provides that a complaint must "state sufficiently detailed facts to support a

reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). Although the Sixth Circuit has not officially weighed in, other courts describe Rule G(2)(f) as setting forth a heightened pleading standard. *United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015) (citing *United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1068 (9th Cir.1994)); *United States v. $1,756.03 in U.S. Currency*, 772 F. Supp. 3d 842, 868 (E.D. Mich. 2025) (citing *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 196–97 (D.D.C. 2014)); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008).

The Court agrees that Rule G(2)(f) contemplates a heightened pleading requirement. To explain why, some history is in order.

Prior to the enactment of Rule G in 2006, courts looked to Supplemental Rule E for forfeiture actions. Rule E provides that "the complaint shall state the circumstances from which the claim arises *with such particularity* that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a) (emphasis added).[1] Over time, Rule E(2) "evolved" as applied to civil forfeiture cases, primarily because of the passage of the Civil Asset Forfeiture Reform Act in 2000. *See* Fed. R. Civ. P. Supp. R. G(2) advisory committee's note to 2006

[1] Rule E applies to "actions in personam with process of maritime attachment and garnishment, actions in rem, and petitory, possessory, and partition actions." Fed. R. Civ. P. Supp. R. E(1). Rule G, by contrast, applies specifically to "forfeiture action[s] in rem arising from a federal statute." Fed. R. Civ. P. Supp. R. G(1).

amendment. And so, today, "[t]he complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id.* (citing *U.S. v. Mondragon*, 313 F.3d 862 (4th Cir. 2002)). Ultimately, cases like *Mondragon* were carried forward "without change" via Rule G(2)(f). *Id.*[2]

*Mondragon* recognized that Rule E(2) imposed a "heightened particularity in pleading requirement." 313 F.3d at 865 (quoting *Riverway Co. v. Spivey Marine & Harbor Serv. Co.,* 598 F. Supp. 909 (S.D. Ill. 1984)). Today, while Rule G(f) does not include the word "particularity," it does require "detailed facts"—a sharp departure from Rule 8's "short and plain" pleading standard. Rule 8 does not require detailed allegations. *Twombly*, 550 U.S. at 556 (citation omitted). The fact that Rule G(2)(f) *does* require detailed facts, especially in conjunction with older caselaw like *Mondragon*, suggests that Rule G(2)(f) is closer to Rule 9 than Rule 8 on the pleading spectrum. It is, in short, a heightened pleading standard "designed to guard against

[2] The Sixth Circuit determination that "Supplemental Rule E(2)(a) imposes a more stringent standard than the pleading requirements of the Federal Rules of Civil Procedure" is strong evidence that Rule G(2)(f) imposes a similarly heightened standard. *See United States v. Real Prop. Located at 2323 Charms Rd.*, 946 F.2d 437, 441 (6th Cir. 1991). When *2323 Charms Road* was decided (before the passage of CAFRA), "the [G]overnment's trial burden was to show probable cause for forfeiture; the burden of proof then shifted to the claimant." *Mondragon*, 313 F.3d at 865. Since CAFRA, however, the Government has had "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). But *Mondragon* itself cited *2323 Charms Road* and explained why pre-CAFRA caselaw, apart from the burden of proof issue, survived the passage of the statute. 313 F.3d at 865. And so, notwithstanding the complicated history, it is very likely that the Sixth Circuit would use *2323 Charms Road* to hold that Rule G(2)(f) also imposes a heightened pleading requirement.

the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013) (citing *Mondragon*, 313 F.3d at 865).[3]

Alongside its obligation to plead "detailed facts" under the heightened pleading standard of Rule G(2)(f), the Government must plead "either direct or inferential allegations respecting *all material elements* to sustain a recovery under some viable legal theory." *United States v. $506,069.09 Seized From First Merit Bank*, 664 F. App'x 422, 434 (6th Cir. 2016) (quoting *Havard v. Wayne County*, 436 F. App'x 451, 457 (6th Cir. 2011)) (emphasis added).

*B. Application of Pleading Requirement*

With these principles in mind, the Court can turn to the Government's complaint here. It is a bareboned document. In a mere five paragraphs, the Government laid out the factual basis for forfeiture. It alleged that an unnamed "Money Laundering Organization" from Mexico used Binance accounts to "transmit the proceeds of international drug trafficking." The complaint did not identify a single violation of American drug laws. Nor did it identify a single illegal transaction. Instead, it referred to non-specific "money laundering activities" from "at least 2018" to the present day. And it alleged that money laundering occurred at some

[3] The heightened pleading standard for civil forfeiture also differs from what the Government needs to put in an indictment or information, which "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

unidentified time across a five-year period and was presumably related to unspecified "drug trafficking sales." ECF No. 9, PageID.43–44.

The allegations are not sufficiently detailed. Perhaps they would meet the normal pleading requirements under Rule 8. But they cannot meet the heightened pleading requirements of Rule G(2)(f). Though courts have seldom dismissed forfeiture complaints for failure to state a claim,[4] such dismissals are not unprecedented. *E.g.*, *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. at 13–16; *United States v. $16,037.00 United States Currency*, No. 19-cv-1056, 2022 WL 3701197, at *5–9 (W.D.N.Y. Aug. 26, 2022). Here, because of the lack of detailed allegations, dismissal is appropriate.

The Government advanced several arguments in opposition to the motion to dismiss for failure to state a claim, all of which the Court finds unpersuasive.

*First*, the Government cited *United States v. 506,069.09 Seized from First Merit Bank*, 664 F. App'x 422 (6th Cir. 2016) in support of its view that the complaint satisfies Rule G(2)(f). ECF No. 44, PageID.293–294; ECF No. 50, PageID.328.[5] Because pleading requirements cannot be applied in a vacuum, it helps to assess the actual complaint from *First Merit Bank*. It stands in stark contrast to the complaint in the instant case.

---

[4] The dearth of dismissals likely results from the fact that close to 80% of forfeitures in federal court are uncontested. *See* David Pimentel, *Forfeitures Revisited: Bringing Principle to Practice in Federal Court*, 13 Nev. L.J. 1, 27 (2012) (citation omitted).

[5] *First Merit Bank* is the sole Sixth Circuit case to have ever assessed the sufficiency of a pleading under Rule G(2)(f). Other Sixth Circuit cases, like *2323 Charms Road*, were issued prior to the enactment of Rule G in 2006 and the passage of CAFRA in 2000. 946 F.2d 437 (6th Cir. 1991).

In *First Merit Bank*, the thirteen-page forfeiture complaint alleged that Dr. Syed J. Akhtar-Zaidi trafficked oxycodone, morphine, oxymorphone, and hydrocodone in violation of 21 U.S.C. § 841 through Pain Management of Northern Ohio Inc. (PMNO) locations in Solon, Ohio; that the Drug Enforcement Administration suspended Dr. Zaidi's registration for prescribing controlled substances; that undercover agents, in 2012 and 2013, visited a PMNO location and obtained prescriptions for schedule II and III pain medication drugs without a thorough medical examination; that Zaidi personally prescribed more than a thousand opioid tablets to the agents, who paid for the drugs in cash, after he met with them for an average of three minutes each; that no agent ever reported pain of more than four on a scale of one to ten and no agent ever claimed to have unbearable pain; that, in the first nine months of 2013, Zaidi would often see between sixty and eighty patents per day and, on at least one occasion, he saw ninety-two patients in a single day; that, from September 2011 to September 2013, Zaidi prescribed "Oxycodone products totaling 1,131,920 dosage units, morphine products totaling 217,897 dosage units, and oxymorphone products totaling 150,803 dosage units"; that Zaidi and his wife, Erum Zaidi, received income from PMNO that was deposited into various financial accounts; that Erum reported that she was the office manager for PMNO and received payroll checks from the company that were deposited into Defendant accounts; that Zaidi had at least twelve bank accounts, three investment portfolios with Ameriprise Financial, and one retirement account with Genworth and comingled funds amidst the Defendant accounts; that the proceeds circulated through the PMNO business

accounts exceeded $9,800,000 in deposits and $9,500,000 in withdrawals; and that Zaidi and/or Erum purchased 139 pieces of assorted jewelry valued at $90,820.00 in Pakistan in June or July of 2013. *United States v. $506,069.09 Seized From First Merit Bank*, Case No. 1:14-cv-00023, ECF No. 1-1 (N.D. Ohio Jan. 6, 2014).

On those facts, the Sixth Circuit affirmed the district court's denial of Erum's motion to dismiss a portion of the forfeiture complaint. *First Merit Bank*, 664 F. App'x at 433–34. And, given the amount of detail in the complaint, the decision was not a surprise. But because the complaint in *First Merit Bank* contained so much more detail than the instant complaint, it does not help the Government.

*Second*, the Government argued that tracing is not an issue for motions to dismiss. ECF No. 44, PageID.293. True enough, courts have held that the Government "need not show that all of the claimed property is tainted to satisfy Supplemental Rule G(2)(f)." *Aguilar*, 782 F.3d at 1109. But the *Aguilar* decision does not absolve the Government of the obligation to plead facts about traceability. *See One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 16 (dismissing forfeiture complaint for failure to comply with Rule G(2)(f) and noting that, "[a]bsent some specific indication that the [property] is derived from or traceable to illicit activity, the complaint must be dismissed"). Here, the Government failed to plead adequate detail about the connection between the assets and anything criminal.

*Third*, the Government suggested that, because a federal magistrate judge already found that probable cause exists to seize the assets, the judicial determination conclusively resolves the motion to dismiss for failure to state a claim.

ECF No. 50, PageID. 324. That view is not without precedent in the Sixth Circuit. One court found that, because "probable cause is a higher standard than the reasonable belief required for filing a civil forfeiture complaint," when a magistrate judge has already issued a seizure warrant, motions to dismiss about the sufficiency of the pleadings in a civil forfeiture case should be denied. *United States v. 12 Parcels of Real Prop.*, No. 16-cv-43, 2017 U.S. Dist. LEXIS 161810, at *6–7 (E.D. Ky. Sep. 29, 2017) (citation omitted). But the Eastern District of Kentucky's conclusion was incorrect. *Mondragon* expressly rejected that view: "[w]hether there is probable cause for a seizure warrant and whether a complaint meets the particularity requirement [for civil forfeiture] are separate issues. The determination of one issue is not a substitute for the determination of the other." 313 F.3d at 867 n.*. As discussed above, Rule G(2)(f) carries forfeiture cases like *Mondragon* "forward without change." Fed. R. Civ. P. Supp. R. G(2) advisory committee's note to 2006 amendment.

Here, denying the motion would be especially improper because the claimants have not seen all the information that the Government submitted to the magistrate judge in its effort to establish probable cause. According to the Government, although the amended complaint is "only 9 pages long, . . . the affidavit supporting the seizure warrant ran to 58 pages." ECF No. 51, PageID.334. The Court has not seen the affidavit, but it seems likely that the 58-page document provided substantially more detail than the amended complaint. Allowing the Government to seize assets and then hide the details somewhere other than the complaint would gut the protections of Rule G(2)(f) and leave claimants in the dark about details that they are entitled to

see. Thus, whatever the magistrate judge may have done, the instant complaint does not meet the heightened pleading requirements of Rule G(2)(f).

* * *

At bottom, the Government tried to defend the sufficiency of the complaint by pointing to the simple nature of the allegations: "[T]he facts are simple. We seized money from a money launderer. Or in other words, this User ID was doing money laundering, and we seized some money from that User ID." ECF No. 44, PageID.292. But the Government needs more than a label like "money laundering" to proceed with a civil forfeiture complaint and comply with Rule G(2)(f). Accordingly, the Court will dismiss the complaint.

*C. Leave to Amend*

That said, the dismissal will be without prejudice, and the Court will grant leave to amend. "Dismissal with prejudice is appropriate when 'the complaint could not be saved by an amendment.'" *Wershe v. City of Detroit*, 112 F.4th 357, 372 (6th Cir. 2024) (quoting *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 n.1 (6th Cir. 2021)). Again, Rule 9(b)'s heightened pleading standard provides a helpful analogue. Generally, "when a motion based on a lack of sufficient particularity under Rule 9(b) is granted, regardless of whether it is coupled with a motion to dismiss, it will be with leave to amend the deficient pleading." 5A *Wright & Miller's Federal Practice & Procedure* § 1300 (4th ed. 2026). The tendency to grant leave to amend stems from "the liberal amendment provisions of Federal Rule of Civil Procedure 15." *Id.*

The same liberal provisions apply to in rem civil forfeiture cases. *See* Fed. R. Civ. P. Supp. R. G(1) ("To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply."); *see also* Fed. R. Civ. P. Supp. R. G(1) advisory committee's note to 2006 amendment ("Civil Rule 15 applies, in light of the circumstances of a forfeiture action."). It is therefore unsurprising that one of the more prominent recent dismissals under Rule G(2)(f) included leave to amend. *One Gulfstream G-V Jet*, 941 F. Supp. 2d at 16.

Here, the Government has alluded to additional facts outside the face of the complaint that could cure the deficiencies identified above. For example, in its response, the Government noted that, since the seizures, "this investigation has led to . . . related prosecutions" and provided citations to two pending criminal cases ECF No. 44, PageID.294. And the Government apparently has a 58-page affidavit that supported the initial seizure. ECF No. 51, PageID.334. As a result, the Court has little doubt that the Government has more facts that it could put in an amended complaint that could satisfy Rule G(2)(f). Accordingly, the Court will dismiss the complaint without prejudice and grant leave to amend.

II. Other Arguments for Dismissal

Finally, Porras advanced a couple other arguments for dismissal: (1) lack of jurisdiction and (2) failure to state a claim for operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960.

*A. Jurisdictional Issues*

To begin, Porras argued that the Government lacks "personal or in rem jurisdiction." ECF No. 22, PageID.95. Because Porras is a resident and citizen of Costa Rica who does not appear to have any connection to the United States, he argued that the Government has not established a "sufficient nexus" between him and the United States to sustain jurisdiction and adjudicate his interests in the cryptocurrency. *Id.* (citing *United States v. Batato*, 833 F.3d 413, 428 (4th Cir. 2016)). But the Government does not need to show minimum contacts to adjudicate the controversy because the requirements of *International Shoe v. Washington*, 326 U.S. 310 (1945) are inapplicable to civil forfeiture.

The Court has jurisdiction over the in rem proceeding because "the acts or omissions giving rise to the forfeiture" allegedly occurred in the Eastern District of Michigan. 28 U.S.C. § 1355(b)(1)(A); ECF No. 9, PageID.39. It also has jurisdiction because the cryptocurrency was allegedly brought to the Eastern District, which is a basis for venue and, thus, also a basis for jurisdiction according to the forfeiture statute. 28 U.S.C. § 1355(b)(1) (citing 28 U.S.C. § 1395); ECF No. 9, PageID.39.

Porras, however, seemed to argue that the Government needs personal jurisdiction over him as a claimant to decide the case. That is a seldom-raised issue that hinges on how broadly or narrowly one reads a Supreme Court case from the 1970s, *Shaffer v. Heitner*, 433 U.S. 186 (1977). At first blush, *Shaffer* could be seen as requiring in rem forfeiture cases to meet the minimum contacts requirements of *International Shoe*. After all, the broad language of *Shaffer* proclaimed that "all

assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer*, 433 U.S. at 212. But the opinion is not as sweeping as it seems. The case involved quasi-in-rem jurisdiction—not pure in rem jurisdiction, which is of course the doctrine that applies to civil forfeiture.[6] As a result, the sole appellate court to have reached the question in the forfeiture context has held that the due process requirements from *International Shoe* and its progeny do not apply to in rem proceedings. *United States v. Obaid*, 971 F.3d 1095, 1106 (9th Cir. 2020); *see also Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 259–60 (4th Cir. 2002) (agreeing, in the cybersquatting context, that "*Shaffer* only holds that property alone is not sufficient contact to support personal jurisdiction over a non-resident as to matters unrelated to the property" (citation modified)). This makes sense because the personal jurisdiction requirement limits the Court's exercise of authority over defendants and, here, the defendant property is in the Eastern District of Michigan.

"[I]n the forty-plus years since *Shaffer* was decided, no court has dismissed a civil forfeiture action for lack of personal jurisdiction over a claimant." *Obaid*, 971 F.3d at 1103. And the undersigned will not be the first. The Supreme Court recently warned lower courts to not overread *Shaffer* "as suggesting that *International Shoe* discarded every traditional method for securing personal jurisdiction that came

[6] "An action quasi in rem is still an in rem proceeding—the difference being that, rather than resolve the interests of *all* persons in designated property, a quasi in rem proceeding resolves only the interests of *particular* persons, generally the parties to the action, in the property." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 509 (6th Cir. 2022) (citations omitted).

before." *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 141 (2023). With that kind of guidance, it would be foolhardy to overread *Shaffer* as implicitly overruling "longstanding precedent anchoring *in rem* jurisdiction to the presence of the res." *Obaid*, 971 F.3d at 1101.

Thus, notwithstanding the forceful arguments of Judge Ikuta in her dissent in *Obaid*, "the jurisdictional inquiry here begins and ends with § 1355(b)," *United States v. Real Prop. Located in Los Angeles*, No. 4:20-cv-2524, 2020 WL 7212181, at *4 (S.D. Tex. Dec. 4, 2020). Because the res is in the Eastern District, jurisdiction is easily satisfied.

*B. Failure to State a Claim Under 18 U.S.C. § 1960*

Next, in one paragraph, Porras argued that the complaint failed to sufficiently allege that claimant operated an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. ECF No. 22, PageID.97. Unlicensed money transmitting is one of the three theories on which the Government is proceeding. ECF No. 9, PageID.41–42. The Government, who responded late to the motion to dismiss, barely addressed the argument. ECF No. 50. But even without much assistance from the Government, the argument fails.

Property is subject to forfeiture when it is "involved in a transaction or attempted transaction" that violates any one of several statutes. 18 U.S.C. § 981. That includes unlicensed money transmitting businesses. *Id.* (citing 18 U.S.C. § 1960). For civil forfeiture, the Government ultimately needs "to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). What

matters is the guilt of the property. Porras might contest that he is an innocent owner. But the burden is *his* to prove—not the Government's. In other words, Porras has "the burden of proving that [he] is an innocent owner by a preponderance of the evidence." 18 U.S.C. 983(d)(1).[7]

Thus, the fact that the Government did not plead facts that suggested that Porras was implicated in anything criminal is inapposite. The Government needs to plead "sufficiently detailed facts to support a reasonable belief that the [G]overnment will be able to meet *its* burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f) (emphasis added). Whatever the complaint's problems, failing to plead facts about Porras's criminality is not one of them. Porras's final argument for dismissal therefore misses the mark.

III. <u>Performance of Counsel</u>

Finally, a few words about the performance of counsel. The most egregious conduct occurred when Porras's counsel, Alaleh Kamran, completely misrepresented one of the leading cases on civil forfeiture, *U.S. v. Mondragon*, 313 F.3d 862 (4th Cir. 2002), in one of the motions to dismiss. *Mondragon* is one of just a handful of cases that are cited in the Advisory Committee Notes to Supplemental Rule G, and it concerns a key issue in the motion to dismiss: the pleading standard for forfeiture proceedings.

[7] Because Porras appears to be claiming that he acquired a property interest *after* the illegal conduct that gave rise to the forfeiture, the test is whether, when he acquired an interest in the cryptocurrency, he (1) "was a bona fide purchaser or seller for value" and (2) "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. 983(d)(3)(A).

According to the brief submitted by Kamran, *Mondragon* "reversed a forfeiture judgment because the complaint was conclusory and did not set forth facts supporting the conclusory allegations." ECF No. 22, PageID.96. But the exact opposite outcome resulted in the case. In *Mondragon*, the district court granted summary judgment for the Government and denied the claimant's motion to strike the complaint as lacking in particularity. 313 F.3d at 864. The claimant then appealed the district court's denial of the motion to strike. But the Fourth Circuit did not reverse the district court as Porras said. Rather, it *affirmed* the district court's denial. *Id.* at 867. And it held that the complaint *did* state "the circumstances giving rise to the forfeiture claim with sufficient particularity that [the claimant] could have commenced a meaningful investigation of the facts and drafted a responsive pleading." *Id.*

The Court cannot recall a prior occasion when an advocate so brazenly misrepresented the holding of a prominent case. And the brief contains other errors. For one, the brief mistakenly attributed *Mondragon* to the Fifth Circuit rather than the Fourth Circuit. ECF No. 22, PageID.96. More concerningly, the brief also used a quote that does not appear to exist. *See id.* at PageID.95.

According to the brief, *United States v. $448,342.85*, 969 F. Supp. 2d 1194, 1205 (D. Nev. 2013) said that "mere proximity to illegal activity is not enough." ECF No. 22, PageID.95. That pincite in the Federal Supplement, however, belongs to *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013), which is a case about the Real Estate Settlement Procedures Act—not forfeiture. The case cited by the claimant undeniably does not contain the quote. And although there is a Seventh

Circuit case about forfeiture entitled *United States v. $ 448,342.85*, it too lacks the quote. *See* 969 F.2d 474 (1992). Normally, when an advocate seriously stumbles, opposing counsel will point out the error. Here, however, the Government regrettably failed to do so.

Given the concerning conduct by Kamran outlined above, the Court could easily order her to show cause at an in-person hearing for why she should not be formally sanctioned for violating Rule 11. If, however, Kamran makes a $500 donation to the Detroit Riverfront Conservancy or the Belle Isle Conservancy, the Court will not order Kamran to show cause, and it will not proceed with any formal sanctions. Rather, the Court will construe the donation as an informal sign of good faith and a promise to do better going forward. To avail herself of the Court's offer, Kamran should file a sworn statement on the docket, no later than fourteen days from the entry of this order, that she has made such a donation.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motions to dismiss [22, 33, 42] are **GRANTED IN PART**, as discussed above, and the complaint is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the Government must **FILE** any amended complaint **no later than fourteen days from the entry of this order**.

**IT IS FURTHER ORDERED** that, if Alaleh Kamran wishes to avoid formal disciplinary proceedings, she must **FILE** a sworn statement on the docket attesting

that she has made a $500 donation to the Detroit Riverfront Conservancy or the Belle Isle Conservancy **no later than fourteen days from the entry of this order**.

**IT IS FURTHER ORDERED** that, unless a subsequent motion to dismiss is filed, the parties must **SUBMIT** a joint proposed stipulated scheduling order **no later than thirty-five days from the entry of this order**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 6, 2026