**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. 2:23-cv-10394 |
| Plaintiff, | HON. STEPHEN J. MURPHY III |
| v. | |
| 65.08094134 Bitcoin; 247653.48461442 United States Dollar Tether; 9.1345 Ethereum; 25000.461 United States Dollar Tether; 1.00000785 Bitcoin; 0.17972627 Bitcoin; and 27892.00185173 United 247,653.48461442 | |
| Defendant in rem, and | |
| MARCELO ANTONIO WILSON PORRAS | |
| Claimant. | |

---

**CLAIMANT MARCELO ANTONIO WILSON PORRAS' RENEWED MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS & AUTHORITIES PURSUANT TO SUPPLEMENTAL RULE G(8)(b)(i) AND RULE 12(b)(6)**

NOW COMES MARCELO ANTONIO WILSON PORRAS ("Claimant"), by and through undersigned counsel, and moves this Honorable Court to dismiss with prejudice the Second Amended Complaint for Forfeiture (ECF No. 56) as to the 247,653.48461442 United States Dollar Tether (USDT) seized from Binance

User ID 40215431 pursuant to Supplemental Rule G(8)(b)(i) and Federal Rule of Civil Procedure 12(b)(6).

As set forth in the accompanying Memorandum of Law, the Second Amended Complaint fails to state sufficiently detailed facts supporting a reasonable belief that the Government will be able to establish at trial the statutory relationship between the claimed USDT and the offenses alleged.

WHEREFORE, Claimant respectfully requests dismissal with prejudice of the Second Amended Complaint as to the 247,653.48461442 USDT seized from Binance User ID 40215431 for failure to state a claim.

September 24, 2026

Respectfully submitted,

LAW OFFICES OF ALALEH KAMRAN

By: Alaleh Kamran
Alaleh Kamran, Esq.
16130 Ventura Boulevard, Suite 320
Encino, CA 91436
Telephone: (818) 986-6222
alalehkamran@alalehkamran.com
California State Bar No. 158648

# TABLE OF CONTENTS


STATEMENT OF ISSUE PRESENTED [5]
CONTROLLING OR MOST APPROPRIATE AUTHORITY [5]
I. PRELIMINARY STATEMENT [6]
II. INTRODUCTION [7]
III. LEGAL STANDARD [8]
IV. ARGUMENT [10]
A. THE SAC ADDS EXTENSIVE DETAIL CONCERNING THE ALLEGED DTMLO BUT STILL FAILS TO PLEAD THE FACTUAL BRIDGE TO PORRAS'S PROPERTY. [10]
B. THE § 1957 THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT THE GOVERNMENT WILL BE ABLE TO ESTABLISH THE REQUIRED STATUTORY NEXUS. [12]
C. THE § 1956 THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT THE SEIZED USDT WAS "INVOLVED IN" OR TRACEABLE TO PROPERTY INVOLVED IN MONEY LAUNDERING. [13]
D. THE § 1960 THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT THE SEIZED USDT WAS INVOLVED IN OR TRACEABLE TO PROPERTY INVOLVED IN A TRANSACTION VIOLATING § 1960. [14]
E. THE § 881(a)(6) THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT PORRAS'S USDT FALLS WITHIN A STATUTORY FORFEITURE CATEGORY. [15]
V. CONCLUSION [17]

# TABLE OF AUTHORITIES

**Cases**

*United States v. $506,069.09 Seized from First Merit Bank*, 664 F. App'x 422 (6th Cir. 2016) [5, 9–11]
*United States v. Agrawal*, 97 F.4th 421 (6th Cir. 2024) [13]
*United States v. Coffman*, 574 F. App'x 541 (6th Cir. 2014) [13]
*United States v. Erker*, 129 F.4th 966 (6th Cir. 2025) [5, 12]
*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1 (D.D.C. 2013) [5, 9, 11–12]

**Statutes and Rules**

18 U.S.C. § 981(a)(1)(A) [5, 13–14]
18 U.S.C. § 983(c)(1), (3) [5, 8, 15]
18 U.S.C. § 1956 [13–14]
18 U.S.C. § 1957 [12–13]
18 U.S.C. § 1960 [14–15]
21 U.S.C. § 881(a)(6) [5, 15–16]
Supplemental Rule G(2)(f) [5, 8–9, 13–17]
Supplemental Rule G(8)(b)(i) [1–2, 5, 18]
Fed. R. Civ. P. 12(b)(6) [1–2, 5, 18]

# MEMORANDUM OF LAW IN SUPPORT OF CLAIMANT MARCELO ANTONIO WILSON PORRAS'S RENEWED MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO SUPPLEMENTAL RULE G(8)(b)(i) AND FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## STATEMENT OF ISSUE PRESENTED

Whether the Second Amended Complaint satisfies Supplemental Rule G(2)(f) as to the 247,653.48461442 United States Dollar Tether seized from Binance User ID 40215431, where the Government alleges three cryptocurrency transfers into that account on January 28, 2021, with an aggregate value stated as 288,852.75 BUSD, followed nearly sixteen months later by seizure of 247,653.48461442 USDT, but pleads no interim account history or other sufficiently detailed facts supporting a reasonable belief that the Government will be able to establish at trial the statutory relationship between the seized USDT and the offenses alleged.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Supplemental Rule G(2)(f) and G(8)(b)(i).

18 U.S.C. §§ 981(a)(1)(A), 983(c)(1), (3); 21 U.S.C. § 881(a)(6).

Opinion and Order, ECF No. 54, PageID.355, 359–365, 370.

*United States v. $506,069.09 Seized from First Merit Bank*, 664 F. App'x 422, 434 (6th Cir. 2016) (unpublished).

*United States v. Erker*, 129 F.4th 966, 970, 977 (6th Cir. 2025).

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14, 16 (D.D.C. 2013).

## I. PRELIMINARY STATEMENT

Claimant Marcelo Antonio Wilson Porras ("Porras" or "Claimant") seeks dismissal of the Government's Second Amended Complaint for Forfeiture ("SAC") as to 247,653.48461442 United States Dollar Tether ("USDT") seized on May 19, 2022, from Binance User ID 40215431 (the "Porras Account" or "Account").

The Government alleges that a drug-trafficking money-laundering organization ("DTMLO") used cryptocurrency accounts to receive and transmit narcotics proceeds and conduct unlicensed money transmitting. The SAC now devotes substantial detail to that alleged organization. It identifies participants, recounts controlled transactions, traces cryptocurrency through numerous addresses and Binance accounts, and pleads detailed transactional histories for several accounts.

As to Porras's property, however, the chronology remains remarkably simple and sparse. The Government alleges that on January 28, 2021, the Porras Account received three transfers with an aggregate value stated as 288,852.75 BUSD from accounts the Government alleges were definitively tied to drug money laundering and unlicensed money transmitting. ECF No. 56 ¶¶ 65, 74(a), PageID.428, 437. Nearly sixteen months later, on May 19, 2022, the Government seized 247,653.48461442 USDT from that account. ECF No. 56 ¶¶ 6(b), 7, PageID.381. What the SAC still does not plead is what happened in between.

That omission is the heart of this motion. Rule G does not require the Government to prove its case in the complaint, or trace every unit of cryptocurrency, or plead every transaction occurring in the Account. But the SAC needs to plead with sufficient facts supporting a reasonable belief that the Government will be able to establish the statutory relationship between the January

2021 receipts and the USDT seized sixteen months later. This SAC does not do so as to this Claimant.

## II. INTRODUCTION

The Government has now given the Court sixty-four pages of allegations describing an alleged international laundering network, controlled transactions, cryptocurrency accounts, conversions, withdrawals, transfers, and investigators' conclusions. Yet of those sixty-four pages, only two paragraphs are devoted specifically to Porras and his property. Those paragraphs do not supply the missing factual bridge.

The SAC alleges that Binance User ID 40215431 received three transfers on January 28, 2021, with an aggregate value stated as 288,852.75 BUSD, from accounts the Government alleges were "definitively tied" to drug money laundering and unlicensed money transmitting. ECF No. 56 ¶¶ 65, 74(a), PageID.428, 437. Nearly sixteen months later, on May 19, 2022, the Government seized 247,653.48461442 USDT from the same account. ECF No. 56 ¶¶ 6(b), 7, PageID.381. The SAC alleges no interim transaction history, balances, conversions, deposits, or withdrawals within User ID 40215431 between those two dates.

In its Opinion and Order issued as ECF No. 54, this Honorable Court held that the Government's prior pleading failed to allege adequate detail connecting the assets to criminal activity and rejected the shorthand proposition: "We seized money from a money launderer. Or in other words, this User ID was doing money laundering, and we seized some money from that User ID." ECF No. 54, PageID.365. The Court further held that the absence of a requirement to trace every dollar "does not absolve the Government of the obligation to plead facts about traceability." Id. at PageID.363.

The SAC cures the lack of detail concerning the alleged criminal enterprise. It still does not allege that the cryptocurrency received in January 2021 remained in the account, was converted into the seized USDT, survived subsequent transfers, or otherwise became traceable to the property seized in May 2022. For other accounts, the Government pleads deposit and withdrawal totals, rapid conversions, transfers, ending balances, and investigators' conclusions. For User ID 40215431, it does not.

The SAC has morphed into a labyrinth of accounts, actors, transactions, and allegations. Ariadne's thread matters because the thread is the record. It preserves the path taken through the labyrinth, permits one to retrace that path, test the available branches, identify the dead ends, and return to the point where logic failed. Rule G asks for the legal equivalent: enough pleaded facts to follow the Government's theory from the alleged criminal activity to this res. The thread reaches Porras's account in January 2021. It reappears at seizure in May 2022. Between those points the record goes bare. The thread frays precisely where the Government must connect the alleged enterprise to Porras's property.

Porras does not seek strict tracing, a complete account history, a particular accounting methodology, or trial-level proof. He challenges whether the facts alleged support a reasonable belief that the Government will be able to establish the required property nexus at trial.

## III. LEGAL STANDARD

Supplemental Rule G(2)(f) requires a forfeiture complaint to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Under 18 U.S.C. § 983(c)(1), that ultimate burden is proof by a preponderance of the evidence. Rule G does not require the

Government to place its entire evidentiary case in the complaint, nor does Porras ask it to do so.

In its Opinion and Order issued as ECF No. 54, this Honorable Court explained that Rule G requires "detailed facts" and that the Government must plead "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." ECF No. 54, PageID.360 (quoting *United States v. $506,069.09 Seized from First Merit Bank*, 664 F. App'x 422, 434 (6th Cir. 2016)). The Sixth Circuit applied that standard in the unpublished *First Merit Bank* decision. The Government need not plead every fact or item of evidence in its possession. It is sufficient to plead enough facts for the claimant "to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *First Merit Bank*, 664 F. App'x at 434. The question is whether what the Government has pleaded supports a reasonable belief of eventual proof.

That distinction is particularly important here because this Court has already addressed it in this case. Rule G(2)(f) imposes a heightened pleading requirement and requires "detailed facts," a standard this Court described as materially more demanding than Rule 8's requirement of a "short and plain" statement. ECF No. 54, PageID.356–360. The heightened standard serves to guard against forfeiture based upon conclusory allegations. *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013), cited in ECF No. 54, PageID.359. The Government must therefore plead not merely allegations of criminal activity, but direct or inferential allegations respecting the material elements of a viable forfeiture theory.

In its prior Order, this Court examined the complaint underlying *First Merit Bank* and found that it "stands in stark contrast" to the Government's prior pleading here. ECF No. 54, PageID.361. The *First Merit Bank* complaint identified

the underlying criminal activity, described the flow of proceeds into identified accounts, alleged millions of dollars in deposits and withdrawals, identified commingling, and connected the proceeds to the defendant property. Id. at PageID.361–363. This Court concluded that *First Merit Bank* did not assist the Government because the complaint there contained what the Government's pleading here lacked: substantially greater factual detail connecting the alleged criminal conduct to the property sought to be forfeited. Id. at PageID.363.

## IV. ARGUMENT

### A. THE SAC ADDS EXTENSIVE DETAIL CONCERNING THE ALLEGED DTMLO BUT STILL FAILS TO PLEAD THE FACTUAL BRIDGE TO PORRAS'S PROPERTY.

For Michel-Martinez's Binance account, the Government alleges millions of dollars in deposits and withdrawals, an undercover Bitcoin deposit, conversion into USDT, rapid movement of funds, an eventual zero balance, and the investigator's conclusion that the account's primary purpose was to facilitate laundering. ECF No. 56 ¶¶ 51–52, PageID.408–412. The Government plainly knows how to plead a transactional history. It pleads none for User ID 40215431 during the sixteen months between the January 2021 receipts and the May 2022 seizure.

Paragraph 66 alleges that investigators reviewed a "significant sample" of recipient Binance accounts and that "many" displayed laundering characteristics. It does not allege that User ID 40215431 was included in that sample or that this account displayed any identified characteristic. ECF No. 56 ¶ 66, PageID.431–432.

Paragraph 74(b) alleges that Porras claims not to know the identity of the person or entity from whom he says the funds came. Whatever that allegation may or may not suggest about Porras's knowledge, it supplies no facts about what

happened to the January 2021 receipts within User ID 40215431 or how those receipts are connected to the USDT seized sixteen months later.

Paragraph 74(c) concerns a different Binance account, User ID 40646606, and a different transfer. To the extent paragraph 74(c) is pleaded to connect Porras to the alleged network, it still supplies none of the facts needed to connect the property at issue here to that network. It alleges no transfer between User ID 40646606 and User ID 40215431 and no connection between the 70,625 BUSD identified in paragraph 74(c) and the USDT seized from User ID 40215431. ECF No. 56 ¶ 74(c), PageID.437–438.

In its Opinion and Order issued as ECF No. 54, this Honorable Court made clear that Porras's personal culpability is not the issue: "What matters is the guilt of the property." ECF No. 54, PageID.370. The SAC now pleads an alleged enterprise in detail. Even considering the scheme-wide allegations and paragraphs 66 and 74 collectively, however, the SAC falls short of alleging additional facts connecting the January 2021 receipts to the USDT seized in May 2022.

*First Merit Bank* requires direct or inferential allegations respecting the material elements of a viable forfeiture theory. *United States v. $506,069.09 Seized from First Merit Bank, 664 F. App'x 422, 434 (6th Cir. 2016).* Here, the missing allegations are the ones connecting the January 2021 receipts to the May 2022 res.

In *United States v. One Gulfstream G-V Jet Aircraft*, the Government alleged an extensive pattern of corruption and that the aircraft had been purchased with proceeds of criminal activity. The complaint was dismissed because the allegations failed to connect the aircraft to the alleged illicit acts. 941 F. Supp. 2d 1, 4, 13–16 (D.D.C. 2013). This Court relied on *One Gulfstream* in dismissing the prior complaint here: "[a]bsent some specific indication that the [property] is derived from or traceable to illicit activity, the complaint must be dismissed." ECF

No. 54, PageID.363 (quoting *One Gulfstream*, 941 F. Supp. 2d at 16). The question remains whether the pleaded facts connect the January 2021 receipts to the 247,653.48461442 USDT seized in May 2022.

Ariadne's thread did not solve the labyrinth by describing it. It created and preserved a record of the route, allowing the traveler to retrace each choice until the path could be tested from beginning to end. The SAC describes the labyrinth in extraordinary detail. It does not preserve the factual route from the January 2021 receipts to the May 2022 res. Without that record, the Court is left with two endpoints and no pleaded path between them.

## B. THE § 1957 THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT THE GOVERNMENT WILL BE ABLE TO ESTABLISH THE REQUIRED STATUTORY NEXUS.

As relevant here, § 1957(a) prohibits knowingly engaging or attempting to engage in a monetary transaction in criminally derived property valued at more than $10,000 and derived from specified unlawful activity. Section 1957(f)(2) defines "criminally derived property" as property constituting, or derived from, proceeds obtained from a criminal offense. 18 U.S.C. § 1957(a), (f)(2).

Although the Government need not prove tracing at the pleading stage, the SAC must plead sufficiently detailed facts supporting a reasonable belief that the Government will be able to prove that the seized USDT was involved in a transaction violating § 1957 or was traceable to property involved in such a transaction.

In *United States v. Erker*, 129 F.4th 966, 970, 977 (6th Cir. 2025), the Sixth Circuit held in the post-trial criminal context that pointing to a withdrawal from a commingled account "might not be enough" because the withdrawn funds must derive from a criminal source, while rejecting strict dollar-for-dollar tracing. The

point here is equally narrow: the Government need not trace each dollar, but it must plead facts supporting the alleged derivation of the property it seeks to forfeit.

The SAC pleads no additional facts connecting the January 2021 receipts to the USDT seized in May 2022. Nothing pleaded supports a reasonable inference that the Government will be able to prove that the seized USDT was involved in, or traceable to property involved in, a § 1957 transaction. Even reading Count I to incorporate all preceding factual allegations, the § 1957 theory remains deficient under Rule G(2)(f).

C. THE § 1956 THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT THE SEIZED USDT WAS "INVOLVED IN" OR TRACEABLE TO PROPERTY INVOLVED IN MONEY LAUNDERING.

Section 981(a)(1)(A) reaches property "involved in" a transaction violating § 1956, as well as property traceable to such property. That reach is broader than proceeds alone, but it still requires a relationship between the property and the prohibited conduct.

In *United States v. Coffman*, 574 F. App'x 541, 561 (6th Cir. 2014), the Sixth Circuit held in the criminal-forfeiture context that commingled untainted funds may be forfeitable where the commingling facilitates concealment of tainted funds. In *United States v. Agrawal*, 97 F.4th 421, 444 (6th Cir. 2024), the Sixth Circuit characterized *Coffman* as recognizing that untainted assets may be "involved in" money laundering when used to conceal illegally obtained money, while distinguishing substitute-property forfeiture under 21 U.S.C. § 853(p).

The SAC identifies no account-specific transaction involving the seized USDT and alleges no additional facts supporting a reasonable inference that the USDT was involved in, or traceable to property involved in, the alleged § 1956 offenses. Nor does the alleged § 1956(h) conspiracy supply the missing

connection. Even reading Count I to incorporate the entire factual narrative, the SAC remains deficient under Rule G(2)(f).

## D. THE § 1960 THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT THE SEIZED USDT WAS INVOLVED IN OR TRACEABLE TO PROPERTY INVOLVED IN A TRANSACTION VIOLATING § 1960.

Section 981(a)(1)(A) likewise permits forfeiture of property involved in a transaction or attempted transaction violating § 1960, or property traceable to such property.

Porras does not revisit the contention that he personally must have operated an unlicensed money transmitting business. In its Opinion and Order issued as ECF No. 54, this Honorable Court rejected the absence of allegations concerning Porras's criminality as a basis for dismissal and stated: "What matters is the guilt of the property." ECF No. 54, PageID.370.

The SAC alleges a connection between User ID 40215431 and accounts associated with unlicensed money transmitting. It does not allege the connection that matters here: the connection between the January 2021 receipts and the USDT seized from User ID 40215431 in May 2022. Nothing pleaded supports a reasonable inference that the Government will be able to prove that the seized USDT was involved in, or traceable to property involved in, a § 1960 transaction.

The Government need not prove tracing in the complaint or plead every transaction in the account. But the existing allegations still do not bridge the January 2021 receipts to the USDT seized in May 2022. Even reading Count II to incorporate the entire factual narrative, the § 1960 theory remains deficient under Rule G(2)(f).

E. THE § 881(a)(6) THEORY DOES NOT PLEAD FACTS SUPPORTING A REASONABLE BELIEF THAT PORRAS'S USDT FALLS WITHIN A STATUTORY FORFEITURE CATEGORY.

Although Count III cites § 881 generally, the quoted language invokes § 881(a)(6), which reaches: (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical; (2) proceeds traceable to such an exchange; and (3) moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

The SAC does not allege that the seized USDT was furnished or intended to be furnished in a controlled-substance exchange. As to traceable proceeds, the SAC pleads no additional facts connecting the January 2021 receipts to the USDT seized in May 2022. Nothing pleaded supports a reasonable inference that the Government will be able to prove that the seized USDT was proceeds traceable to a controlled-substance exchange.

The asserted deficiency is not the absence of a particular drug sale identified by date and participant. It is the absence of additional allegations connecting the January 2021 cryptocurrency receipts to the USDT seized in May 2022.

To the extent the Government's theory is that the property was used to commit or facilitate, or was involved in, a criminal offense, § 983(c)(3) requires the Government to establish at trial a substantial connection between the property and the offense. Rule G does not require proof of that substantial connection in the complaint. Even assuming that USDT falls within § 881(a)(6)'s facilitation clause, the SAC pleads no facts supporting a reasonable belief that the Government will be able to prove that Porras's seized USDT was used or intended to be used to facilitate a Controlled Substances Act violation.

The SAC does not plead sufficiently detailed facts supporting a reasonable belief that the Government will be able to prove that the USDT seized in May 2022 falls within any of § 881(a)(6)'s three forfeiture categories. Count III therefore remains deficient under Rule G(2)(f).

Finally, Counts I, II, and III expressly incorporate paragraphs 1 through 19, although the detailed account allegations appear in paragraphs 20 through 75, while also referring generally to the "facts outlined above." ECF No. 56 ¶¶ 76–81, PageID.439–440. The Court need not resolve that textual mismatch because the counts remain deficient even if all preceding allegations are considered.

## V. CONCLUSION

The Government has substantially expanded its allegations concerning the alleged criminal enterprise. It has named actors, described transactions, identified accounts, recounted controlled activity, and supplied detail that was absent from its prior pleading. But the defect that caused the prior complaint to fail as to this res remains.

The SAC still does not plead sufficiently detailed facts supporting a reasonable belief that the Government will be able to prove that the 247,653.48461442 USDT seized from Binance User ID 40215431 was criminally derived, involved in, or traceable to property involved in the offenses alleged.

The Achilles' heel of the SAC is revealed by the SAC itself. The Government plainly knows how to armor the pleading. It has expanded the enterprise allegations and added details concerning other accounts and other actors.

Yet the single point upon which forfeiture of Porras's property depends remains exposed: the pleaded connection between the January 2021 receipts and the USDT seized sixteen months later. The thread remains bare at the one point

where it must hold. The Government need not prove the entire path now. But it must plead the thread. It has not.

This is no longer the Government's first opportunity to plead that thread. This Court previously dismissed the Government's complaint under Rule G(2)(f), identified the deficiency, and granted fourteen days to amend. ECF No. 54, PageID.356, 365–366. The Government responded with a sixty-four-page SAC containing extensive additional factual allegations. The same deficiency remains.

The Government has had the opportunity to cure the deficiency identified by this Court. It substantially expanded its pleading, but did not cure that defect. Another opportunity to expand the surrounding narrative would not supply the missing factual bridge between the January 2021 receipts and the May 2022 res.

Porras therefore respectfully requests dismissal with prejudice under Supplemental Rule G(8)(b)(i) and Federal Rule of Civil Procedure 12(b)(6) of the Second Amended Complaint as to the 247,653.48461442 USDT seized from Binance User ID 40215431 for failure to state a claim.

Dated: September 24, 2026 Respectfully submitted,

LAW OFFICES OF ALALEH KAMRAN

By: Alaleh Kamran

Alaleh Kamran, Esq.
16130 Ventura Boulevard, Suite 320
Encino, CA 91436
Telephone: (818) 986-6222
alalehkamran@alalehkamran.com
California State Bar No. 158648

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of September, 2026, a copy of the foregoing Renewed Motion to Dismiss Second Amended Complaint was served upon the following by electronic means through CM/ECF:

K. Craig Welkener
Assistant United States Attorney
Eastern District of Michigan
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 269-4796
kenton.welkener@usdoj.gov

By: Alaleh Kamran
ALALEH KAMRAN
Attorney for Claimant